Anne **FUCHILLA**, Plaintiff,

v.

Dr. Darwin **PROCKOP**, Individually and as Chair, Department of Biochemistry, University of Medicine and Dentistry of New Jersey, and the University of Medicine and Dentistry of New Jersey, Defendants.

Civ. A. No. 85–0693.

United States District Court,
D. New Jersey.

Oct. 13, 1987.

Denise Reinhardt, Newark, N.J., for plaintiff.

Katherine Suga, Deputy Atty. Gen., Newark, N.J., for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

### INTRODUCTION

In this case plaintiff, Anne Fuchilla, alleges that defendants, the University of

Medicine and Dentistry of New Jersey ("UMDNJ") and Dr. Darwin Prockop, chairman of the department of biochemistry at UMDNJ, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. As relief, plaintiff seeks compensatory and punitive damages and attorney's fees and costs, reinstatement to her former position, and an injunction against future discrimination and retaliation. Plaintiff also asks the court to retain jurisdiction until such time as the alleged discrimination has been remedied. Defendants move for summary judgment on a variety of grounds.

At the outset, I note that summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Chippolini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial," or it will be defeated on the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting Fed.R.Civ.P.* 56(e)) (emphasis in original). Utilizing this standard, I find the following facts.

### FACTS

In February of 1965, plaintiff was hired as a secretary in the Department of Preventive Medicine by the predecessor of defendant UMDNJ, the College of Medicine and Dentistry of New Jersey. A few months later, plaintiff transferred to the Personnel Department and then shortly thereafter to the Psychiatry Department, where she worked with Dr. William Lay-

man, department chairman. Plaintiff had become a patient of Dr. Layman's in 1964. In 1965, she commenced a romantic relationship with Dr. Layman which was to last until plaintiff ended it in 1981.

Plaintiff worked continuously for Dr. Layman from 1965 to 1981 with the exception of a three year lay-off period (September, 1975 to December, 1978) and a thirteen month medical leave (October, 1980 to November, 1981). Soon after returning from medical leave, plaintiff requested a transfer to the Rutgers Medical School at Piscataway. Following another medical leave from March 29, 1982 until May 17, 1982, plaintiff transferred from Newark to the Biochemistry Department at Piscataway. In July, 1982, she started working in the position of Secretary I for defendant Prockop.

On February 6, 1983, Fuchilla commenced another medical leave of absence which lasted until May 6, 1983.[1] University policy provides that a leave of absence does not guarantee an employee's reemployment in the position vacated. On May 4, 1983, the plaintiff advised Linda Groce of the UMDNJ Personnel Department that she was interested in returning to the university and requested notification of all available positions. Although Ms. Fuchilla interviewed for one secretarial position at the Secretary I level, it was not offered to her. By letter dated June 10, 1983, Ms. Groce informed the plaintiff that since she had turned down the secretarial position offered her and since her leave of absence had expired, she was being terminated effective June 15, 1983. Subsequently, by letters dated June 19 and June 20, 1983 respectively, the plaintiff and her attorney notified Ms. Groce that plaintiff had not rejected any offer because no offer was made.

Against this background, the history of plaintiff's employment discrimination charges may be reviewed. Shortly after

---

1. In their brief, defendants contend that plaintiff commenced her medical leave of absence on Jauary 10, 1983. *See* Defendants' Brief in Support for Summary Judgment at 4 (*citing* to Defendants' Appendix at 42). However, the appen-

dix citation contains a copy of a "Request for Personnel Action" which states that plaintiff's leave of absence commenced February 9, 1983. I can find no support for defendants' contention in the papers submitted.

her transfer to the Piscataway campus, Ms. Fuchilla filed with the Equal Employment Opportunity Commission (EEOC) a letter dated August 30, 1982 which read in pertinent part:

I would like to file a sexual harassment complaint against my former boss, Dr. William A. Layman, M.D., University of Medicine and Dentistry of New Jersey— N.J. Medical School. I was told to send this letter and you would docket it until I can come in personally.

Ms. Fuchilla also filed an employment discrimination action against Dr. Layman and UMDNJ in state court in October, 1982. On December 7, 1983, the plaintiff filed a sworn charge of sexual and retaliatory harassment and retaliatory discharge against the University of Medicine and Dentistry. The charge alleges that the University knew of and tolerated sexual harassment by one of its agents, Dr. William Layman, chairman of the psychiatry between July 1981 and July 1982. Moreover, the charge states that UMDNJ, through its agents Drs. Prockop and Layman, Linda Groce and others, retaliated through harassment, intimidation and discharge. The charge specifically referred to the transfer to the Biochemistry Department in Piscataway in July 1982 and her termination of June 15, 1983. Plaintiff charged that such retaliation was due to her protest over the harassment and retaliation allegedly caused by UMDNJ, Layman and Prockop. The EEOC determined that the plaintiff's sexual harassment charges were untimely and confined its investigation to the retaliation charges. A right to sue letter was issued November 9, 1984.

This action was commenced by complaint filed February 12, 1985. The amended complaint filed March 22, 1985 alleges that after the termination in July 1981 of plaintiff's romantic relationship plaintiff had with Dr. Layman, Layman sexually harassed and intimidated her, retaliated against her for opposing the alleged sexual discrimination and forced her to transfer to the Department of Biochemistry. The complaint further alleges that due to her sex and her opposition to the alleged unlawful employment practices, her new supervisor, Dr. Prockop, intimidated and retaliated against her, which caused her to suffer additional harm and necessitated additional medical leaves of absence. Moreover, the complaint alleges that at all times, agents of the UMDNJ knew of the circumstances which allegedly culminated in her leaves and her transfer and unlawfully discharged her when her leave expired. The complaint asserts that these acts were in violation of 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a) as well as 42 U.S.C. § 1983. I will address each of defendants' grounds for summary judgment in turn.

## ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's § 1983 claim against the University of Medicine and Dentistry of New Jersey must be dismissed as barred by the eleventh amendment. It is clear that a federal district court may not consider or dispose of a case on nonjurisdictional grounds until it first determines it has jurisdiction over the subject matter and the parties in a case. *Pacific Intermountain Express Co. v. Hawaii Plastics Corp.*, 528 F.2d 911, 912 (3d Cir.1976). I must therefore consider the defendant's eleventh amendment argument first.

The eleventh amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The significance of this amendment "lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III" of the Constitution. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171, *reh. denied*, 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985) (*quoting Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

Although the eleventh amendment does not explicitly so state, it has been held to

prohibit suits brought by a citizen of a state against his own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). A state may be subject to suit in the federal courts if it expressly consents. 465 U.S. at 99, 104 S.Ct. at 907.

■ When the suit is against state officials, a state agency or an entity other than the state, the eleventh amendment will operate to bar the action when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dept. of Treas.,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the government from acting, or to compel it to act.'" 465 U.S. at 101, n. 11, 104 S.Ct. at 908, n. 11 (*quoting Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

■ When acting under § 5 of the fourteenth amendment, Congress can abrogate eleventh amendment immunity without state consent, as it did in the Title VII of the Civil Rights Act of 1964. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). However, § 1983 does not override a state's eleventh amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979).

■ The question of whether an agency is the alter ego of the state and thereby not amenable to federal jurisdiction is ultimately a question of federal, not state law, although state decisions about the relationship between an agency and the state are instructive. *See Blake v. Kline,* 612 F.2d 718, 722 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). The Third Circuit sets forth nine factors to be considered in determining whether an "alter ego" status attaches to an instrumentality of the state:

[L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance.

Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

*Urbano v. Board of Managers of the New Jersey State Prison,* 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970); *see also Kovats v. Rutgers, the State University,* 822 F.2d 1303 (3d Cir.1987).

■ I need not laboriously apply the nine factors to the facts of this case because I agree with the well reasoned, exhaustive analyses of my colleagues Judges Barry and Debevoise, as well as former Judges Stern and Lacey in recent opinions concluding that eleventh amendment immunity does not protect UMDNJ. *See Gona v. University of Medicine and Dentistry of New Jersey,* Civ. No. 83–3828, slip op. (D.N.J. Aug. 15, 1986) (Debevoise, J.); *Cohen v. Board of Trustees of the University of Medicine and Dentistry,* Civ. No. 85–3841, slip op. (D.N.J. June 27, 1986) (Barry, J.), appeal docket, No. 87–5121 (3d Cir. February 13, 1987); *see also Khalil v. University of Medicine and Dentistry,* Civ. No. 86–1066, letter op., (D.N.J. Nov. 30, 1986) (Stern, J.), appeal docket, No. 87–5309 and 87–5443 (3d Cir. May 1, 1987 and July 7, 1987); *Mauriello v. University of Medicine and Dentistry,* Civ. No. 83–1569 (D.N.J. Aug. 10, 1984), *rev'd on other*

*grounds,* 781 F.2d 46 (3d Cir.1986).[2] In denying defendant UMDNJ's motions for summary judgment, Judges Barry and Debevoise relied primarily on findings that UMDNJ could not establish that judgments against it would be satisfied exclusively from state funds. *Cohen,* slip op. at 18; *Gona,* slip op. at 9–10. Moreover, although it is dispositive here, I note that the Appellate Division of New Jersey Superior Court has found that UMDNJ is not an alter-ego of the state in a state court action brought by Ms. Fuchilla. *See Fuchilla v. Layman,* 210 N.J.Super. 574, 581–82, 510 A.2d 281 (App.Div.), *certif. granted,* 105 N.J. 563, 523 A.2d 196 (1986).

■ Accordingly, based on the foregoing authorities, I reject this ground for summary judgment. This holding that UMDNJ is not immune also disposes of defendants' next argument that the individual defendant, Dr. Prockop, enjoys eleventh amendment immunity. Defendants contend that any judgment against him would be paid out of the state treasury. However, immunity of employees is derivative of any immunity possessed by the institution. *See Kovats,* 822 F.2d at 1306. As I have found that UMDNJ is not immune, Dr. Prockop may also not be immune.

### QUALIFIED IMMUNITY

The defendants claim they are entitled to the defense of qualified immunity. The defendants bear the burden of showing that they are entitled to this defense. *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). "Although the Court has recognized that in enacting § 1983, Congress must have intended to expose state officials to damages liability in some circumstances, the section has been consistently construed as not intending wholesale revocation of the common-law immunity afforded government officials." *Procunier v. Navarette,* 434 U.S.

555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978).

Prior to *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court endorsed a test for qualified immunity which had subjective and objective components. Thus, an official was denied qualified immunity if:

he knew or should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the (complainant) or if (the official) took the action with malicious intention to cause a deprivation of constitutional rights or other injury.

*Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ However, the Supreme Court in *Harlow, supra,*[3] largely abandoned the subjective elements of this test which involved disputed facts thereby requiring resolution by jury and developed an objective test for determining the applicability of qualified immunity. Concluding that bare allegations of malice should not suffice to subject government officials either to the costs of trial or burdens of discovery, the Court held that

government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. To be deemed violative of clearly established law, the unlawfulness of the conduct must be apparent in light of preexisting law. *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ This objective approach is amenable to the resolution of claims on a pretrial motion to dismiss or for summary judgment as a matter of law. *See Czurlanis v. Albanese,* 721 F.2d 98, 108 n. 8 (3d Cir.

---

**2.** The Third Circuit did not address the eleventh amendment issue in *Mauriello* as it was apparently not before it. *See Kovats,* 822 F.2d at 1312 n. 9.

**3.** In *Harlow,* the Supreme Court stated the standard for qualified immunity was the same for federal and state officials sued for constituitional violations under § 1983. 457 U.S. at 818, n. 30, 102 S.Ct. at 2738, n. 30.

1983). Thus, the court must determine what the current law is and whether it was clearly established at the time the action occurred. If the law prohibiting the official act was clearly established then "a reasonably competent public official" should have known of it and the qualified immunity defense "should ordinarily fail" unless the official claims extraordinary circumstances such that he neither knew nor should have known the applicable law. *Harlow*, 457 U.S. at 818–819, 102 S.Ct. at 2738–39; *Czurlanis*, 721 F.2d at 108. If, however, the law was not clearly established, the defendant will be immune unless the plaintiff can show that the defendant actually knew that he was violating the law. *Harlow*, 457 U.S. at 821, 102 S.Ct. at 2739 (Brennan, J. concurring); *Czurlanis*, 721 F.2d at 108.

█ The complainant alleges that the plaintiff was sexually harassed while an employee of UMDNJ by Dr. Layman when she refused to continue a past intimate relationship with him. As a result of this harassment the plaintiff transferred to a new department within the UMDNJ and began working for Dr. Prockop as his secretary. The complainant alleges that she was subject to retaliatory harassment and eventually terminated when Dr. Prockop learned that the plaintiff filed an action against Dr. Layman for violation of her constitutional rights in the Superior Court of New Jersey.

The plaintiff in her complaint alleges that the defendants violated her federal constitutional rights including the right to equal access to the courts and equal protection under the law, and the statutory right recognized by Congress in Title VII.

Applying the *Harlow* standard here, I find defendants are not entitled to a finding of qualified immunity. Plaintiff alleges claims of sexual and retaliatory harassment under Title VII and 42 U.S.C. § 1983, which, if true, were clearly established in the law at the time the conduct occurred.

*See, e.g., Tomkins v. Public Service Electric & Gas Co.*, 568 F.2d 1044 (3d Cir.1977) (action for sexual harassment and retaliation may be maintained under Title VII); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (sex discrimination claim maintained under equal protection clause); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (action for wrongful discharge following assertion of first amendment rights maintainable under § 1983).

Moreover, I find that the contours of the law on sexual discrimination in employment were at the time of this conduct sufficiently clear that a reasonable official would understand that what was done violated rights. *See Anderson*, 107 S.Ct. at 3039. Here, defendants have failed to show extraordinary circumstances which would excuse them from knowledge of this law. In sum, I conclude that defendants have satisfied neither prong of the *Harlow* test and accordingly find they are not entitled to qualified immunity.

## TIMELINESS

### A. *Title VII Claims*

Defendants next argue that plaintiff's Title VII and § 1983 claims for sexual harassment and retaliation are untimely. Turning first to the Title VII claims, under 42 U.S.C. § 2000e–5(e), a charge must be filed within 180 days of the alleged unemployment practice, except that a 300 day limit is imposed where the aggrieved party has first instituted proceedings with the authorized state or local discrimination agency. Defendants argue that of plaintiff's allegations that she experienced sexual harassment from July 1981 through July 1982, retaliatory harassment in fall 1982 and retaliatory discharge in June 1983, the only allegation occurring within 300 days of December 7, 1983 was the alleged retaliatory discharge.[4] Therefore, the defend-

---

**4.** Although the record does not indicate that plaintiff did in fact file a complaint first with the New Jersey Division on Civil rights (NJDCR), the defendants appear to assume *ar-* *guendo* that she did. *Cf. Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984) (on a motion for summary judgment, defendant had burden of showing that neither

ants contend that the other Title VII claims are time barred.

■ In response, plaintiff contends that her August 30, 1982 letter to the EEOC indicating her intention to file a complaint for sexual harassment against Dr. Layman served as the initial complaint, and therefore it satisfied the time requirement of § 2000e–5(e). Moreover, plaintiff argues that her formal complaint filed in December of 1983 which alleges charges against Dr. Prockop and UMDNJ serves as an amendment to her initial complaint and therefore "relates back" to the date of the initial complaint, thereby, making these additional allegations against Prockop and the UMDNJ timely.

The theory that an amendment to an EEOC charge can relate back in time to the date of the filing of the original complaint for purposes of tolling the time restrictions of § 2000e–5(e) derives from the EEOC's relation back regulation codified at 29 C.F.R. § 1601.12(b) which states:

> (b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

(Emphasis supplied.) This regulation permits amendments to initial charges "to cure technical defects or omissions" including, for example, "failure to verify the charge, or to clarify and amplify allegations made therein." Failure to name a

party is not included among those "technical defects or omissions" for which a charge may be amended and I do not believe a fair reading of this regulation would support such an addition. Other courts have held that 29 C.F.R. § 1601.12(b) does not allow an untimely amendment to name as new defendant. *See Ridgeway v. International Brotherhood of Electrical Workers,* 466 F.Supp. 595 (N.D.Ill.1979); *Plummer v. Chicago Journeymen Plumbers' Local Union 130,* 452 F.Supp. 1127, 1134 (N.D.Ill.1978), *rev'd on other grounds,* 657 F.2d 890 (7th Cir.1981); *Landry v. Rock Island R.R. Co.,* 8 Fair Empl. Practice Cases (BNA) 498, 500–01 (N.D.Ill.1974) [Available on WESTLAW, 1974 WL 1355]. I agree with the reasoning of those cases.

The filing of a charge before the EEOC serves to notify the charged party of the alleged violation and also brings the party before the EEOC to provide an avenue for voluntary compliance without resort to litigation. *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977), *aff'd on appeal after remand,* 629 F.2d 248 (1980), *cert. granted, judgment vacated and case remanded on other grounds,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981); *Le-Beau v. Libbey-Owens-Ford, Co.,* 484 F.2d 798, 799 (7th Cir.1973); *Fekete v. U.S. Steel Corp.,* 424 F.2d 331, 334 (3rd Cir.1970). A charge must be filed against a party with the EEOC before an action in the district court can be commenced. *See Glus,* 562 F.2d at 885 and cases cited therein. Although in certain circumstances an employment discrimination action may be brought in federal court against a party not named in the EEOC complaint, (e.g., when there is an identity of interest between the named and the unnamed party or when the unnamed party has represented to the plaintiff that it must relate to the party through the unnamed party), *see Glus,* 562 F.2d at 888, these factors are not present in this case.

Here, the party named in the initial letter charge was only Dr. Layman. No mention

---

plaintiff nor the EEOC referred the discrimination claim to the state discrimination agency). I will thus address only the state's argument and

likewise assume that the NJDCR received plaintiff's claim.

is made of UMDNJ or Dr. Prockop. Neither the UMDNJ nor Prockop have an interest identical to Dr. Layman's. Moreover, the record does not show that UMDNJ and Prockop told the plaintiff to communicate with them through Dr. Layman, nor can I reach this conclusion by drawing all reasonable inferences in favor of the plaintiff. Therefore, I find that plaintiff's formal charge naming defendant Prockop and UMDNJ dated Dec. 7, 1983 will not relate back to the date of plaintiff's letter to the EEOC. Moreover, plaintiff may not bring an action against these unnamed parties in this case under the exception detailed in *Glus v. G.C. Murphy Co.* cited *supra.*

■ Plaintiff argues that if these claims do not relate back to the original charge, they must still be considered as timely under the continuing violation theory. An action may be brought by one who has suffered one or more discriminatory acts as long as the plaintiff establishes that the offending practice is an ongoing one. *Jewett v. International Telephone & Telegraph Corp.,* 653 F.2d 89, 91 (3d Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). To succeed on this theory, plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitation] period." *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 323 (Supp.1979)). Before determining whether the continuing violation theory applies, the court must first identify precisely the "unlawful employment practice" of which the plaintiffs complain. *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Bronze Shields Inc. v. New Jersey Dept. of Civil Service,* 667 F.2d 1074, 1083 (3d Cir.1981). Each defendant must be considered separately.

Here, plaintiff's theory must fail as to Dr. Prockop. Plaintiff alleges that Dr. Prockop, after learning of plaintiff's employment discrimination suit filed in state court in October 1982 against Dr. Layman, engaged in retaliatory conduct against her, including threatening her with adverse employment consequences, refusal to advance her and deprecation of her work. Plaintiff does not specify precisely when this conduct occurred by affidavit or other sworn statement. However, the "Request for Personnel Action" contained in Defendants' Appendix shows that plaintiff took a medical leave of absence from February 9, 1983 to May 6, 1983. Defendants' Appendix at 42. Since plaintiff does not allege that she was harassed in any way after her leave of absence began, the latest date defendant Prockop's conduct could have occurred, for purposes of this summary judgment motion, was February 8, 1983, the last work day before February 9, 1983.

Plaintiff's sworn charge against Dr. Prockop was filed December 7, 1983, 302 days after the date the last discriminatory act by Prockop could have occurred. Thus, assuming that there were a series of discriminatory acts, no act occurred within the 300–day time limit, and accordingly, plaintiff's claims against defendant Prockop are time barred.

■ Turning now to plaintiff's claims against UMDNJ, plaintiff's complaint alleges two kinds of discriminatory treatment: (1) sexual harassment and (2) retaliation. Reading plaintiff's complaint somewhat liberally, it appears that plaintiff is alleging that UMDNJ is liable vicariously or on a *respondeat superior* theory for the alleged sexual harassment by Dr. Layman claiming that UMDNJ knew of her previous relationship but failed to investigate Layman's alleged conduct. Amended Complaint ¶ 11. As to the retaliation claim, plaintiff apparently alleges a series of acts. First, plaintiff contends that UMDNJ knew of but failed to correct Dr. Prockop's alleged retaliatory conduct. Amended Complaint ¶ 18. Second, she contends defendant UMDNJ discharged her in retaliation for her opposition to sexual harassment. *See* Amended Complaint ¶¶ 19, 22.

As to plaintiff's first claim, it is difficult to determine when such a cause of action accrued against UMDNJ because it is an

action[5] of omission rather than commission. However, the Court must strive to determine precisely this, as the liability of employer under Title VII cannot exist indefinitely. Here, I find that plaintiff's cause of action against UMDNJ regarding Dr. Layman's conduct accrued, at the latest, in July of 1982, when plaintiff commenced at her new position following her transfer to the Biochemistry Department at the Piscataway Campus. Plaintiff's filing of her formal complaint against UMDNJ with the EEOC thus occurred well beyond the 300–day limit as to this claim. Accordingly, this claim is time barred.

■ Plaintiff's next claim of retaliation against UMDNJ stands in a different posture. Plaintiff contends that UMDNJ is responsible for defendant Prockop's alleged retaliatory conduct during the time she worked for him, as well as its alleged retaliatory termination of her employment. As I found previously, the record indicates that defendant Prockop's alleged conduct did not occur beyond February 8, 1983. Similarly, defendant UMDNJ's responsibility for such conduct cannot last beyond that time. Therefore, this claim, by itself, would be time barred. However, the alleged retaliatory discharge occurred in June of 1983, which is clearly within 300 days of plaintiff's filing of the formal charge with the EEOC. If these acts can be said to be related, then plaintiff's claim of retaliation based on both contentions may be brought under a continuing discrimination theory. If not, plaintiff may only bring that claim which occurred within the filing period, namely, the discharge.

I find that plaintiff has adequately alleged a pattern of continuing discrimination based upon these two incidents, and I thus find that plaintiff's claim of retaliation based upon both is timely. These incidents are "related acts" in that they both allegedly arise out of acts of discrimination taken against her in retaliation for her exercise of her right to bring an action against an employee of UMDNJ based upon sexual harassment. Accordingly, plaintiff's claims based upon these alleged acts of retaliation are not time barred.

In conclusion, plaintiff's Title VII claims against Dr. Prockop and plaintiff's Title VII claims against UMDNJ based upon alleged sexual harassment are time barred. Plaintiff's Title VII claims against UMDNJ based upon retaliation are timely filed.

### B. *§ 1983 Claims*

■ Defendants also argue that plaintiff's § 1983 claims are time barred. In their moving brief, defendants contend that the New Jersey two year statute of limitations for personal injury actions should be applied to bar § 1983 claims based upon all acts other than the retaliatory discharge. Plaintiff contends that the proper statute of limitation is the six-year statute governing contract claims.

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court determined that the proper statute of limitations to apply in an action under § 1983 is the state statute of limitations governing actions for personal injury. Since plaintiff's action was filed before the Supreme Court decided *Wilson*, the court must determine whether its rule may be applied retroactively. This determination relies on consideration of whether (1) the rule overrules clear past precedent upon which the litigants may have relied; (2) retroactive application will affect the prior history and purposes of previously applied rules; and (3) retroactive application will cause inequitable results. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971); *see also Smith v. City of Pittsburgh*, 764 F.2d 188 (3d Cir.1985), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

---

**5.** Indeed, assuming the claim is not time barred, I have grave doubts that plaintiff could even prevail on this claim. Based on the record before me, I could not conclude under a summary judgment standard that UMDNJ had actual or constructive knowledge of Dr. Layman's discriminatory conduct because plaintiff has failed to controvert UMDNJ's assertion that it had no actual knowledge and plaintiff has failed to demonstrate in the record that defendant UMDNJ had constructive knowledge.

Regarding the first considerations, the Third Circuit has held that where the courts have been erratic and inconsistent in their application of a statute of limitations, a subsequent Supreme Court decision cannot be said to have overruled clear past precedent upon which the parties to an action may have relied. *Smith*, 764 F.2d at 194–95. The issue of which statute of limitations governs employment discrimination actions against public entities and public officials has previously divided the district courts. *Compare Erdmann v. Board of Education of Union County Regional High School District No. 1*, 541 F.Supp. 388 (D.N.J.1982) (if employment rejections constituted failure to promote, six year contract statute of limitations applied; if rejections were viewed as denials of employment, the 180–day limitation of the New Jersey Law Against Discrimination applied) and *Skadegaard v. Farrell*, 578 F.Supp. 1209 (D.N.J.1984) (six-year contract statute of limitations applied in sex discrimination claim against officials at the Adult Diagnostic and Treatment Center) with *Peltack v. Borough of Manville*, 547 F.Supp. 770 (D.N.J.1982) (recognizing that where municipality or other public entity is a defendant, the two-year statute of limits of the NJTCA has been applied). Moreover, in § 1983 actions predicated on other types of discrimination claims, the district courts have been likewise split. *See, e.g., Gipson v. Township of Bass River*, 82 F.R.D. 122, 129 (D.N.J.1979) (statute of limitations in § 1983 action alleging discriminatory conduct of zoning officials); *Peters v. Township of Hopewell*, 534 F.Supp. 1324 (D.N.J. 1982), *aff'd mem.*, 729 F.2d 1448 (3d Cir. 1984) (applying six-year contract statute of limitations against municipality and its officials in action alleging unconstitutional taking).

This confusion was laid to rest, however, in *Aitchison v. Raffiani*, 708 F.2d 96 (3d Cir.1983). In *Aitchison*, the Third Circuit held that the statute of limitations governing an action for wrongful discrimination brought against a municipality and certain of its officials was the two-year statute of limitations governing claims under the NJTCA. *Id.* at 105. In reaching this re-

sult, the Third Circuit analyzed the conflicting district court holdings cited *supra* as well as state law decisions.

The *Aitchison* decision was rendered near the time of plaintiff's alleged discharge. Assuming that plaintiff did not begin to consider filing her federal action until August, 1982 when she filed her first letter with the EEOC, plaintiff cannot have reasonably relied on the six-year statute of limitations because of the disagreement among the courts. In 1983, when the last alleged discriminatory act occurred, the *Aitchison* decision had become law. Thus, at least by 1983, plaintiff should have known that the two-year statute of limitations applied.

As the personal injury statute limitations is equal in length to the NJTCA limit, I cannot say that under the first *Chevron* factor that application of the personal injury statute of limitations overrules clear past precedent upon which plaintiff may have relied. Nor can I say that application of the personal injury statute of limitations would impede the purpose of previously applied rules or would be inequitable, the two remaining *Chevron* considerations. Thus, the two-year personal injury statute of limitations governs plaintiff's § 1983 claims. Since the only claim occurring within two years of the filing of the complaint is the claim of retaliatory discharge against UMDNJ, I find that plaintiff's § 1983 claims based upon other alleged incidents of discrimination are time barred.

## EXCLUSIVITY OF TITLE VII

 Defendants next argue that plaintiff's § 1983 claims must be dismissed because Title VII is the exclusive remedy for claims of employment discrimination. This argument need not detain me long because this court and others have held that relief under § 1983 is available notwithstanding the assertion of claims under Title VII in a case in which the § 1983 claim is based upon alleged violations of constitutional rights. *See Trigg v. Fort Wayne Community Schools*, 766 F.2d 299 (7th Cir.1985); *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th

Cir.1984); *Storey v. Board of Regents,* 600 F.Supp. 838 (W.D.Wis.1985); *Zewde v. Elgin Community College,* 601 F.Supp. 1237 (N.D.Ill.1984); *Skadegaard v. Farrell,* 578 F.Supp. 1209 (D.N.J.1984). Here, plaintiff alleges § 1983 claims based upon denial of the rights of due process and equal protection of the laws under the first and fourteenth amendments to the Constitution. These rights were secured to plaintiff as a state employee. Thus, as I find that Plaintiff § 1983 claims are based upon Constitutional rights independent of her statutory Title VII claims, I find that Title VII does not provide her exclusive remedy.

### ELEMENTS CAUSE OF ACTION
### UNDER § 1983

 Defendant UMDNJ next contends that plaintiff's claims under § 1983 must be dismissed because plaintiff has failed to state a cause of action under that statute. In support of its argument, defendant makes several arguments which will be treated seriatim. At the outset, I note that a cause of action under § 1983 requires proof of two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

#### A. *Respondeat Superior Liability*

Defendant UMDNJ first argues that it may not be held liable for the isolated acts of its employees.

 It is well settled that a local governmental unit may not be held liable under a *respondeat superior* theory solely because it employs an alleged tortfeasor. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). To be liable, the body's employees must have acted according to an unconstitutional official policy or custom of the governmental unit. *Id.* at 694, 98 S.Ct. at 2037. In order to prevail, a plaintiff must therefore establish:

(1) The existence of an officially promulgated authority, or (2) that the practices of [government] officials causing the alleged deprivation were "so permanent and well-settled" as to have the "force of law."

*Anela v. City of Wildwood,* 790 F.2d 1063, 1066 (3d Cir.) (*quoting Monell,* 436 U.S. at 691, 98 S.Ct. at 2036), *reh'g denied,* 793 F.2d 514 (1986).

 Moreover, it is now clear that under appropriate circumstances, the "policy or custom" requirement may be satisfied by a single act of a governmental decisionmaker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298, 89 L.Ed. 2d 452 (1986). For liability to attach, the decision-maker must have final authority to establish governmental policy concerning the action ordered. *Id.* 106 S.Ct. at 1299.

 In urging summary judgment, UMDNJ argues primarily that liability may not obtain here because plaintiff has failed to establish a policy through assertion of a pattern or practice of constitutional violations. *See* Brief in Support of Defendants' Motion for Summary Judgment and Dismissal at 21 (*citing, inter alia, City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) and *Gann v. Schramm,* 606 F.Supp. 1442, 1451 (D.Del.1985). This motion was briefed before the Supreme Court decided *Pembaur,* however. Under *Pembaur,* defendant's argument must now fail because plaintiff need not show repeated acts or a formal written policy in order to have a cause of action against UMDNJ.

In support of her retaliatory discharge claim against UMDNJ, plaintiff alleges the following:

Agents of UMDNJ, who knew of the circumstances which led to her transfers and leaves, failed and refused to provide Ms. Fuchilla with an appropriate position when her medical leave expired, and instead, discharged her for alleged failure to return from that leave.

Amended Complaint, ¶ 19. To be sure, plaintiff's complaint does not specifically

allege the policy or custom with regard to the alleged retaliatory discharge which would support the liability of UMDNJ. Further, plaintiff's brief does little to illuminate this issue. However, a fair reading of plaintiff's complaint and a view of the undisputed facts indicates that the conduct here, although apparently a single act, could support a finding of governmental custom so as to impose liability on defendant UMDNJ. Thus, defendant's motion for summary judgment on this ground is denied without prejudice to its reassertion based upon the principles of *Pembaur.*

### B. *Property Rights*

■ Turning to the second element of plaintiff's § 1983 claim, that the conduct complained of deprived her of rights, privileges or immunities secured by the Constitution, defendant UMDNJ argues that the summary judgment is proper on count five because plaintiff has failed to establish inadequate process or the existence of a property right.

Addressing the process issue first, UMDNJ contends that absent a claim that plaintiff did not have recourse to state process, that the agency was acting according to State policy in denying plaintiff's claim or that the State proceeding was deficient, plaintiff has no due process claim because substantive mistakes do not create a § 1983 cause of action. In support, defendant relies on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and its progeny.

The basis for plaintiff's opposition on this score is less than crystal clear. Plaintiff appears to argue that *Parratt* is inapposite because she is alleging substantive due process violations. Defendant does not address this argument in its reply brief.

Given plaintiff's position, her due process claim based upon property must be dismissed. Plaintiff fails to specify any theory recognized by the courts supporting the existence substantive due process right based upon property in the employment discrimination context and the court knows of none. In her Memorandum of Law, plaintiff cites *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983), which was affirmed

by the Supreme Court subsequent to the briefing in this case. *See* 106 S.Ct. 662 (1986). *Daniels,* however, does not support plaintiff because it does not involve a substantive due process claim. The other case cited by plaintiff, *Moorhead v. Government of the Virgin Islands,* 556 F.Supp. 174 (D.V.I.1983), which is of dubious precedential value after *Hudson v. Palmer,* [468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ] (extending the decision in *Parratt* to intentional deprivations) involves liberty rights to association and speech rights.

In conclusion, because plaintiff has failed to demonstrate a property right which has been violated in this case, summary judgment will be granted as to count five.

### C. *Liberty Interest Under the First and Fourteenth Amendments*

Defendant contends that count four must similarily be dismissed because plaintiff has failed to demonstrate a violation of a first amendment or liberty right under § 1983.

■ I turn first to defendant's first amendment argument. It is settled that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Meyers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). The Third Circuit employs the three-step test set forth in *Trotman v. Board of Trustees of Lincoln University,* 635 F.2d 216 (3d Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981), in evaluating claims of retaliation in violation of the first amendment:

First, the plaintiff must show that s/he engaged in protected activity. *See Pickering v. Board of Education,* 391 U.S. 563 [88 S.Ct. 1731, 20 L.Ed.2d 811] (1968). In that case the Court stated that 'the interests of the [employee] as a citizen, in commenting upon matters of public concern' must be balanced against 'the interests of the State, as an employer, in promoting the efficiency of the

public services it performs through its employees,' *id.* at 568 [88 S.Ct. at 1734–35], and held that comment on matters of legitimate public concern by public school teachers is ordinarily protected activity. Second, a claimant who demonstrates that the activity was protected must then show that the activity was a substantial or motivating factor in a decision or action taken against the claimant. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 [97 S.Ct. 568, 576, 50 L.Ed.2d 471] (1977). Third, the defendant can still defeat plaintiffs' claim by demonstrating that the same action would have been taken even in the absence of the protected conduct. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 416–17 [99 S.Ct. 693, 697, 58 L.Ed.2d 619] (1970); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. at 287 [97 S.Ct. at 576].

*Id.* at 224–25.

As plaintiff contends she was discharged in retaliation for filing her action in state court against Dr. Layman and UMDNJ, the first amendment right plaintiff asserts here is her right to access to the courts. Without engaging in a "matter of public concern" analysis, the courts have found this right to access to be protected under the first amendment. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Brookins v. O'Bannon,* 699 F.2d 648, 652 (3d Cir.1983). Thus, defendant cannot carry its summary judgment burden as a matter of law, and accordingly, summary judgment is denied as to this claim.

■ I must likewise deny defendant's motion for summary judgment on plaintiff's claim of deprivation of liberty. This claim is also predicated on the alleged denial of access to the courts. Plaintiff may assert a liberty interest in obtaining redress in court. *See Silver v. Cormier,* 529 F.2d 161, 163 (10th Cir.1976). Thus, defendant has similarly failed to carry its burden as to this claim, and summary judgment will be denied.

### D. *Equal Protection*

Defendant UMDNJ also moves for summary judgment on plaintiff's equal protection claim stated in count six. Defendant argues that with regard to the retaliatory discharge claim, plaintiff has failed to establish that defendant's alleged conduct was based upon improper classification according to sex.

■ Claims of sexual discrimination are cognizable under the equal protection clause. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). An equal protection claim arises when an individual contends that he [or she] is receiving different treatment than that received by other individuals similarly situated. *Kuhar v. Greensburg–Salem School District,* 616 F.2d 676, 677 n. 1 (3d Cir.1980). To prevail on this claim, plaintiff need not establish a pattern of official discrimination against herself or other female employees; rather a single incident of discrimination could suffice to support such a claim. *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1216–17 (D.N.J.1984).

■ In seeking summary judgment on this claim, defendant UMDNJ in effect argues that plaintiff has failed to link her retaliation claim to a class-based animus. Indeed, in viewing the alleged retaliatory discharge alone, it could be said that UMDNJ's conduct was actually aimed at that class of employees who sue other employees of defendant rather than at the class of women employees.

However, the record as a whole contains other contentions which tend to support plaintiff's equal protection claim. Plaintiff contends that the University knew of and refused to remedy the alleged sexual harassment of Drs. Layman and Prockop which allegedly necessitated her medical leaves of absence. While plaintiff may not recover based upon these allegations which have now been dismissed, they are relevant to the retaliation claim. Plaintiff contends that when she returned from her last medical leave, UMDNJ failed to provide her with an appropriate position and discharged her. Plaintiff also claims that oth-

ers who were not women or who had not opposed discrimination were not harassed or denied privileges of employment. While I cannot say that the record demonstrates a strong case for trial,[6] I conclude that plaintiff has made a sufficient showing to defeat summary judgment. Accordingly, defendant's motion on this ground must be denied.

## RETALIATION UNDER TITLE VII

Defendant UMDNJ contends that plaintiff cannot maintain a claim under Title VII for retaliation because plaintiff has failed to demonstrate a *prima facie* case. A *prima facie* case requires that the plaintiff show at least: (1) that she engaged in a protected activity; (2) that she was subject to an adverse employment decision; and (3) that there was a causal relationship between (1) and (2). *McKenna v. Weinberger*, 729 F.2d 783, 791 (D.C.Cir. 1984); *Canino v. EEOC*, 707 F.2d 468, 471 (11th Cir.1983). Some courts have additionally required that plaintiff prove within his *prima facie* case that the employer had knowledge of his or her participation in the protected activity. *See, e.g., Gilreath v. Butler Manufacturing Co.*, 750 F.2d 701 (8th Cir.1984); *Dean v. Civiletti*, 29 FEP 881 (D.N.D.1981) [Available on WEST-LAW, 1981 WL222], *aff'd in relevant part*, 670 F.2d 99 (8th Cir.1982); B. Schlei & P. Grossman, *Employment Discrimination Law* at 133–34 (2d ed. Supp.1983–85).

With regard to plaintiff's retaliation claim plaintiff adduces nothing but the allegations of her complaint to show a causal relationship between her filing of the sexual harassment complaint in state court and her termination. Defendant on the other hand shows by reference to its policies regarding medical leaves of absence that its decision to discharge Ms. Fuchilla was based upon her failure to obtain another available position following the expiration of her leave. Because plaintiff has totally failed to meet her burden on summary judgment by coming forward with some showing of causality outside of the mere allegations of her pleadings, summary judgment will be granted for defendant on plaintiff's remaining Title VII claim.

## JURY TRIAL & DAMAGES

Defendant finally argued in its brief that if plaintiff's § 1983 claims are dismissed, the court should strike plaintiff's request for a jury trial and damages other than backpay. As I have held that plaintiff may still maintain an action under § 1983, this argument is moot.

## CONCLUSION

For the reasons stated *supra*, defendant's motion for summary judgment with respect to plaintiff's Title VII claims against both defendants is granted in its entirety. Defendant's motion with regard to § 1983 claim is denied with respect to her claims against defendant UMDNJ based upon free speech and liberty rights under the fourteenth amendment but is granted with respect to all claims against defendant Prockop and with respect to the § 1983 claims against UMDNJ based upon due process rights to property and equal protection of the laws. In sum, counts one, two, three, five, six and seven are dismissed against all defendants. Count four is dismissed against defendant Prockop.

---

**6.** Plaintiff primarily relies on *Skadegaard v. Farrell*, 578 F.Supp. 1209 (D.N.J.1984), in opposing defendant's arguments. However, *Skadegaard* involved a motion for dismissal under Fed.R. Civ.P. 12(b)(6). This is a motion for summary jdugment under Fed.R.Civ.P. 56, and plaintiff must meet a higher burden in opposing a properly supported motion by providing affidavits, depositions or other matters which establish that there is a genuine issue for trial. Plaintiff, however, submits only one scanty affidavit choosing rather to rely primarily on the allegations of her complaint. She prevails on this summary judgment motion only because the defendant has not met its burden of demonstrating the absence of material fact and has not been able through affidavits, depositions, etc. to controvert all of plaintiff's assertions. Overall, however, plaintiff's opposition to defendant's motion has been weak, and this bodes poorly for plaintiff's ability to prevail at trial.