**Kathleen HANDLEY and Frank Handley Plaintiffs,**

**v.**

**James PHILLIPS, Michael Kaminski, Leonard Falcone, Allyn Sincavage, Luzerne County Corrections Board, Luzerne County Correctional Facilities Board, Luzerne County Prison Board and County of Luzerne Defendants.**

**Civ. No. 87–1176.**

United States District Court,
M.D. Pennsylvania.

June 9, 1989.

Alice T.K. Corba, Kepner & Kepner, Berwick, Pa., for plaintiffs.

Richard A. Polachek, Fine & Wyatt, P.C., Scranton, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, Chief Judge.

Presently before the Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. The Plaintiffs have filed a brief in opposition to which the Defendants have replied. Local Rule 401 *et seq.* This court has taken into consideration the arguments presented by counsel in this matter and, for the following reasons, shall grant in part Defendants' motion for summary judgment and proceed to trial on the remaining allegations.

## FACTUAL BACKGROUND

Kathleen Handley began her employment with Luzerne County on or about July 1, 1980, when she was hired as a matron at the county prison. Funding for her position was provided by the federal job training program known as CETA until October of 1981, when she was given regular county employment as a prison matron. She continued in this position until indefinitely suspended by the Warden on or about September 2, 1985.

On December 30, 1985, upon the Warden's recommendation, the Luzerne County Prison Board voted three to one in favor of terminating Kathleen Handley's employment.[1] As required by the collective bargaining agreement in effect during the years of her employment, Kathleen Handley's suspension in September of 1985 and subsequent termination in December were the subject of mandatory and binding arbitration.[2] *See* Pennsylvania Public Employe

---

1. The Luzerne County Corrections Board, Luzerne County Correctional Facilities Board, and the Luzerne County Prison Board are all named separately by the Plaintiffs in their complaint. Discussions with counsel and an examination of the record, however, indicates that all are one in the same. Any further reference by this court as to these listed Defendants shall be as to the singular governmental entity known as the Luzerne County Prison Board.

2. The County's termination of Kathleen Handley is based on two alternative grounds pursuant to the prison's Code of Ethics:

(1) As a Level One Offense for "physically [being] unable to perform required duties, other than injuries occurring within the line of duty, which is subject to immediate dismissal, and

(2) As a Level III Offense, which is subject to dismissal upon obtaining a third disciplinary violation after an employee had already received a verbal warning and a three day suspension without pay for separate prior offenses.

The incident that occurred on August 29, 1985, in which the Plaintiff had an emotional

Relations Act, 43 P.S. Section 1101.903. A hearing was held before Arbitrator Perry Zirkel on December 13, 1987, and an award in favor of the Luzerne County Prison Board was handed down on April 21, 1987.

A petition to vacate and/or modify the arbitrator's award was subsequently filed with the Luzerne County Court of Common Pleas by Plaintiff Handley's union, the Public Service Employees Union Local 1300. By a decision and order of Judge Patrick J. Toole, Jr., dated January 11, 1988, the Union's petition to vacate the award was denied and the matter dismissed.

Prior to the Court of Common Pleas' decision upholding the arbitration award, Plaintiffs filed this suit in federal court on August 20, 1987, after receiving a right to sue notice from the Equal Employment Opportunity Commission (EEOC).

At the completion of discovery, the Defendants filed a motion for summary judgment asserting that (1) the full faith and credit clause of the United States Constitution precludes this court from acting under the circumstance of this case; (2) the Plaintiffs have failed to state a claim against any of the moving Defendants under 42 U.S.C. § 1983, the First, Fifth and Fourteenth Amendments to the Constitution, and 42 U.S.C. § 2000e et seq.; (3) this court should not retain the pendent state claims upon the dismissal of the federal question issues; and (4) that the Political Subdivision Tort Claims Act of Pennsylvania cited at 42 Pa.C.S.A. § 8541 et seq. provides immunity as to the alleged state law claims.

The Plaintiffs have filed a brief in opposition challenging the movants' dispositive motion and a reply brief has been submitted pursuant to Local Rule 401.7, making this matter ripe for consideration.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that "summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact". (emphasis in original). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the Court finds that there is a material issue of fact in dispute, its inquiry does not end and the motion denied. Rather, it must proceed to determine that this material issue in dispute is *genuine* in nature. As stated in, *Anderson*, "... summary judgment will not lie if the dispute about a material fact is genuine, if the evidence is such that a reasonable jury would return a verdict for the non-moving party." Id. 106 S.Ct. at 2512. There is no issue for trial unless there is *sufficient* evidence favoring the non-moving party for a jury to return a verdict for that party. If evidence is "merely colorable" or "not significantly probative," summary judgment may be appropriate. *Id.* 106 S.Ct. at 2511. In this sense, summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), in that the inquiry under each is whether the evidence presents a sufficient disagreement to require submission to a jury. *Anderson*, 106 S.Ct. at 2512; *Hankins v. Temple University, et al.*, 829 F.2d 437 (3d Cir. 1987); Sonenshein, State of Mind and Credibility in the Summary Judgment Context: A Better Approach, 78 N.W.U.L.Rev. 774 (1983).

---

outburst after being told to work a second shift is the subject of the Level One Offense.

An oral warning in May 1982; a one day suspension for a uniform violation in January 1985; a three day suspension for violating the prison's "yard out" procedure in August 1985; and the August 1985 violation for the "emotional outburst" are the subject of the Level Three Offense.

*See Luzerne County Corrections Board v. Public Service Employees Local 1300 In Re: Discharge of Kathleen Handley,* Award of Arbitrator, dated April 21, 1987, Doc. No. 14 at Exhibit 3.

## DISCUSSION

### The Complaint

#### 1. Jurisdiction

According to the complaint, this is a civil rights action brought under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e to redress violations of Plaintiffs' rights under the First, Fifth and Fourteenth Amendments of the United States Constitution as well as matters raised under "the Common Law of Pennsylvania." Complaint at ¶ 1. Although provisions other than jurisdictional statutes are cited in the complaint, the court's authority over these matters is based on Title 28 United States Code §§ 1331 and 1343, as well as pendent jurisdiction.

#### 2. Claims Presented.

The initial pleading consists of an eleven count complaint outlining claims brought by Kathleen Handley and/or Frank Handley against all of the defendants. The allegations in Count I begin with a claim that Kathleen Handley's "constitutional rights" were violated since she did not receive notice or a meaningful hearing before her suspension and eventual termination (Complaint at ¶ 28); that officials violated her due process rights by either delaying or not processing her grievances (Complaint at ¶ 29); that her termination for being "physically unable to perform her required duties" was in violation of due process since based on "vague and overbroad language" in the collective bargaining agreement and an invalid Code of Ethics (Complaint at ¶ 30); that her termination based on a violation of the prison's "yard-out procedure" was invalid (Complaint at ¶ 31); that her liberty interest has been violated since the defendants' actions reflect badly on her, have stigmatized her by loss of good name, reputation, honor and integrity, resulting in difficulty in obtaining employment in the field of criminal justice (Complaint at ¶ 32 and 33); and finally, that the defendants' statements that she was terminated for good and proper cause are false and malicious (Complaint at ¶ 34).

Although counsel for the Plaintiffs was not specific in any of the above cited paragraphs as to which provision of the Constitution was violated, it would appear that a § 1983 claim for an infringement of the Fifth and Fourteenth Amendment due process clauses has been attempted.

The Plaintiffs allegations in Count II of the complaint invoke familiar terms for a cause of action under 42 U.S.C. § 1983. Specifically, Plaintiff Kathleen Handley claims that the defendants, "while acting under color of state law," deprived her of the constitutional rights to be free from interference with her "contractual rights". Handley claims, once again, a violation of her "rights not to be deprived of liberty and property without due process of law as guaranteed by the Fifth and Fourteenth Amendments of the Constitution." (Complaint at ¶ 36).

In Count III of the complaint, there is a repeat of the allegations of delay engendered by the defendants in processing the Plaintiff's grievances, including the failure of the defendants to participate in arbitration hearings required under the collective bargaining agreement. Such actions were allegedly taken to deprive the Plaintiff of her constitutional rights of free speech and the ability to petition the government for redress of grievances. (Complaint at ¶ 39).

The allegations in Count IV are challenges to the various disciplinary actions taken against Kathleen Handley throughout her employment. Specifically, Plaintiff disputes the validity of the county's disciplinary actions as to uniform and grooming requirements, the enforcement of a "yard-out" procedure, and suspension for "physically being unable to perform required duties." Complaint at ¶ 41–45. It is Plaintiff's belief that the named governmental officials acted out of "personal animosity" resulting in a violation of her "rights to equal protection of the laws, including but not limited to, her right to the equal opportunity to hold public employment and her right not to be discriminated against in regard to that employment as well as her right to be free from unreasonable and/or

arbitrary government interference with her liberty." Complaint at ¶ 46.

The allegations under Count V of the complaint presents a traditional claim of gender discrimination by averring that Plaintiff and members of her class have been discriminated against by the defendants "in respect to terms, conditions and privileges of employment because of sex ..." Complaint at ¶ 54. Specifically, Plaintiff Kathleen Handley claims the failure of prison authorities to hire her or someone in her class to the position of corporal or sergeant was based on gender and violative of Title 42 United States Code Section 2000e.

Count VI asserts a state claim for breach of contract for defendants' failure to deal fairly and in good faith in processing grievances and providing proper hearings under the terms of the collective bargaining agreement.

The sole claim for relief in Count VII is that the vindictive action of the defendants in dismissing Kathleen Handley was "in violation of public policy." [3]

Count VIII is another allegation of breach of contract, only unlike Count VI, it is alleged that defendants' actions were a malicious and improper interference with her contractual rights and prospective contractual relations. (Complaint at ¶ 66).

Because of the Defendants' "willful, wanton, and malicious" conduct in terminating her employment, Kathleen Handley asserts a claim for emotional distress in Count IX of the complaint.

Count X is brought by Frank and Kathleen Handley claiming that the defendants have portrayed them "in a false light" by accusations of being "regular users and sellers of drugs." As a result of such "slanderous remarks", the Handleys claim "severe emotional anguish, humiliation and emotional distress, loss of her job and wages."

In the last count of the complaint, Plaintiff Frank Handley claims that as a result of the Defendants' actions, he has been deprived of his wife's consortium, society and services.

■ Plaintiffs seek compensatory and punitive damages;[4] the reinstatement of Kathleen Handley; retroactive restoration of all benefits and pay; an expunged personnel record of all incidents occurring in 1985; reasonable attorney fees and costs of Plaintiffs; as well as any further relief as deemed necessary and proper.

Suit Precluded Under 28 U.S.C.
Section 1738

1. Arguments Presented.

Prior to addressing the merits of Plaintiffs' allegations, the Defendants argue that the matters raised in this suit are precluded by 28 U.S.C. § 1738 in light of past administrative and judicial adjudications. Citing the cases of *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) and *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Defendants maintain that "based upon the judicial affirmation of the arbitrator's award, the female Plaintiff is precluded by 28 U.S.C. Section 1738 from instituting the action at barr (sic) or those individual Counts of her Com-

---

**3.** This court is unaware of a "public policy" tort nor of any federally protected right to be free from violations of "public policy." The concept may be an element in analyzing whether there is legitimate grounds for upsetting an arbitration award, but such a request has not been presented to his court. *Amalgamated Meat Cutters v. Great W. Food Co.*, 712 F.2d 122, 124 (5th Cir.1983) and cases cited therein. Thus, a violation of public policy does not alone state a cause of action. *See generally, Vosch v. Werner Continental, Inc.*, 734 F.2d 149, 155 n. 10 (3d Cir. 1984). As such, that count of the complaint will be dismissed.

**4.** As correctly pointed out by the Defendants, punitive damages are not recoverable against a municipality. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 269, 101 S.Ct. 2748, 2760, 69 L.Ed. 2d 616 (1981); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Thus, punitive damages will not be recoverable against Luzerne County and the Prison Board. The individual defendants have the right, however, to move at the close of the Plaintiffs case to strike the recovery for punitive damages if the evidence, or lack thereof, so require.

plaint which are based upon those matters considered and ruled upon by the arbitrator ..." Doc. No. 33 at 15.

In opposition, counsel for Plaintiffs recognize the authority of the *Migra* and *McDonald* cases, however, they challenge their applicability to the facts of this case. For the first time in these proceeding, rather than cite to the general statutory provision of 28 U.S.C. § 1738, Plaintiffs' counsel properly invokes the doctrine of "res judicata" and attempts to distinguish this case from that doctrine's preclusive effects.

After reviewing the arguments presented, it is the finding of this court that the wide preclusive effect of res judicata advocated by the Defendants to dismiss this federal cause of action is inapplicable. As to the state claims for breach of contract or any issue accusing the Defendants of violating the terms of the collective bargaining agreement, however, this court finds the doctrine of collateral estoppel applies and precludes any challenge of these issues based on the prior adjudication in the Court of Common Pleas. *See Public Service Employees' Union Local 1300 v. Luzerne County*, Civ. No. 53–E 1987, attached to Doc. No. 14, Exhibit 4.

2. Court's Analysis.

A.

On May 26, 1790, Congress enacted legislation requiring all federal courts to give such preclusive effect to state court judgments "as they have by law or usage in the courts of the state from [which they are] taken." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 n. 5, 102 S.Ct.

1883, 1889 n. 5, 72 L.Ed.2d 262, *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed. 2d 1405 (1982); U.S. Const. Art. IV, Sec. 1. This concept of giving deference to state judicial adjudications has been codified under Title 28, United States Code, Section 1738:

> The ... judicial proceedings of any court of such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ...

Under the full faith and credit clause, federal courts are required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged. Accordingly, the federal courts consistently have applied res judicata and collateral estoppel to causes of action and issues decided by state courts. *Kremer v. Chemical Construction Corp., supra*, at 466, 102 S.Ct. at 1889, citing *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Montana v. United States of America*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

This court recognizes that the terminology engendered by the full faith and credit clause and its application relating to the preclusive effect of earlier litigation can be confusing, however, the concepts of res judicata and collateral estoppel with their associated vocabulary of merger, bar, claim and issue preclusion, all have one common purpose—to ensure that there will be a point at which litigation ends.[5] *Allen v.*

---

**5.** For a full discussion of the distinction between these concepts, *see* Perritt, *Employee Dismissal Law and Practice*, 2d Edition at 441 (1987) and cases cited therein:

> ... Under the definitions of bar and merger, final merits determination of a cause of action precludes relitigation between the same parties of that cause of action and any allegation or defense which was or might have been presented in the first suit. A merit judgment for the defendant *bars* a subsequent attempt by the plaintiff to relitigate the same cause of action, while a judgment for the plaintiff *mergers* with his cause of action and prevents its assertion in a later suit. When the second suit between the parties involves a different

> cause of action, the absolute barriers of bar and merger are inapplicable and the first judgment can be given only limited res judicata effect under the collateral estoppel doctrine, which precludes relitigation only as to questions which actually were litigated and determined in the first suit. Therefore, the doctrines of bar and merger are used to preclude subsequent claims while collateral estoppel precludes the relitigation of issues already determined.
>
> .... Modern usage distinguishes between *claim preclusion*, usually associated with the term *res judicata*, and *issue preclusion*, usually associated with the term *collateral estoppel*.

*McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).

As to the specific doctrines involved in this case, the Supreme Court explained in *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5 that:

[u]nder the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. (citations omitted).

Moreover, in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the United States Supreme Court held that section 1738 requires federal courts adjudicating an action under 42 U.S.C. § 1983 to give issue and claim preclusive effect to the previous judgment made with respect to the same claim by the state court. The court in *Allen* made clear that *issues actually litigated in a state-court proceeding* are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered.

■ As for cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the Court held in *Kremer v. Chemical Constr. Co.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982), that these same preclusive doctrines apply. Specifically, section 1738 requires federal courts to give preclusive effect to a state court decision reviewing a state administrative agency's determination of an employment discrimination claim. *See also, Kelley v. TKY Refractories Company,* 860 F.2d 1188, 1193 (3d Cir.1988).

### B.

■ When determining whether a prior proceeding should bar a federal court from taking action in a subsequent suit, the court must look to the law of the state where the initial proceeding took place to determine what effect that state would give to the prior judgment. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). In *Safeguard Mutual Insurance Company v. Williams,* 463 Pa. 567, 574, 345 A.2d 664 (1975), the Pennsylvania Supreme Court held:

[i]t is well settled that for the doctrine of res judicata to prevail there must be a concurrence of four conditions: 1) identity of issues, 2) identity of causes of action, 3) identity of persons and parties to the action, and 4) identity of the quality or capacity of the parties suing or sued. (citations omitted). With respect to collateral estoppel we have recently stated that a plea of collateral estoppel is valid if 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *In Re Estate of Ellis,* 460 Pa. 281, 333 A.2d 728, 731 (1975) …

*See also, Kelley v. TKY Refractories Co.,* 860 F.2d 1188, 1194 (3d Cir.1988); *Jalil v. Avdel Corporation,* 873 F.2d 701 (3d Cir. 1989).

### C.

The parties have couched their preclusion challenge only in terms of res judicata with the Defendants arguing that both issues raised and those that could have been raised at the administrative and state court levels would preclude Plaintiff from filing this suit. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *McDonald v. City of West Branch, Mich.,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302

(1984). Thus, the Defendants conclude that

> any and all issues regarding Plaintiff, Kathleen Handley's discharge should have been raised at the time [of her arbitration hearing] and could have been litigated. Moreover, if, Kathleen Handley and/or her Union was unsatisfied with the arbitrator's award, they then had a right to appeal the matter for full decision and hearing to the Court of Common Pleas of Luzerne County. The fact that certain issues were not raised is of no consequence because said issues could have and should have been raised at the time of arbitration. Consequently, Judge Toole's ruling is not only conclusive as to the matters actually litigated, but also as to all matters which should have been adjudicated at that time.

Doc. No. 68 at 8.

In opposition, counsel for the Plaintiffs conclude that res judicata would not apply since the issues are not identical, the parties are not the same, and that "actual litigation and a decision on the merits" was not reached in the state court proceeding. Doc. No. 42 at 23.

#### D.

█ In applying the Pennsylvania standard of res judicata, we are in agreement with the Plaintiffs that as to the constitutional issues raised in this case, the preclusive doctrine does not apply. In viewing the matters presented before him, the arbitrator was limited by the provisions of the collective bargaining agreement, and in particular, in Article XXXII:

> *Section 3.* In the event a grievance goes to arbitration, the arbitrator shall have jurisdiction only over disputes arising out of grievances as to the interpretation and/or application of the provisions of this contract and in reaching his decision, the arbitrator shall have no authority (1) to add to or subtract from or modify in anyway any of the provisions of this contract; (2) to pass upon issues governed by law or applicable governmental administrative rules and regulations thereunder; or (3) to make an award in conflict of such laws, rules and regulations.

Thus, the authority of the arbitrator is to review any grievance in light of the collective bargaining agreement and is framed in terms of contract law. At this juncture, the constitutional questions raised by the Plaintiffs have not been addressed by the specific standards and unique level of scrutiny known to the realm of constitutional law. Specifically, although the arbitrator and the Court of Common Pleas did not find a violation of the collective bargaining agreement, there remains the possibility that those actions, technically proper under contract law, may have been a pretext to obscure improper motives for Handley's termination.

As stated above, it is questionable whether these issues, if raised at the administrative level, would have received the same standard of review afforded a constitutional claim in a judicial proceeding. Even assuming that if presented they would receive such scrutiny, the question for purposes of res judicata is whether Handley had a "full and fair opportunity" to raise those issues at the state court level. *In Re Estate of Ellis*, 460 Pa. 281, 333 A.2d 728, 731 (1975). This court is of the opinion that she did not.

As required by *Migra, supra,* the Supreme Court declared that a federal court must apply any preclusive effect of a state court proceeding not only to claims actually litigated in the state proceeding, but also apply that preclusive effect to claims "that could have been but were not litigated in the state proceeding." Doc. No. 68 at 6 citing *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In order for res judicata to apply, Handley had to be able to raise these claims in the state proceeding. By the time her case reached that level of review, however, she was precluded from doing so since she was "locked in" by the scope of the administrative proceedings. Because the administrative proceeding acted as a precursor to the state court's review, she could not fully and fairly

present these constitutional claims to the Common Pleas Court.

The Defendants may argue that Handley could have raised these matters before the arbitrator and in turn, they would have been addressed by the state court. Such a linking of claims is too tenuous in light of the broad preclusive effect such a holding would bring. For the standard here is whether a litigant had a full and fair opportunity to raise the matter *at the time of presentation to the state court*, not if she could have presented them to an administrative proceeding which in turn would be given over for judicial review.

Finally, the concerns raised in *McDonald v. West Branch, supra,* 466 U.S. at 290, 104 S.Ct. at 1803, as to not giving preclusive effect to unappealed arbitration awards are still valid concerns here in light of the limited judicial scope of review required of the Court of Common Pleads. Specifically, the court in *McDonald,* 466 U.S. at 290–291, 104 S.Ct. at 1803, articulated its concerns as follows:

> First, an arbitrator's expertise "pertains primarily to the laws of the shop, not the law of the land." ....
>
> Second, because an arbitrator's authority derives solely from the contract, (citation omitted), an arbitrator may not have the authority to enforce § 1983....
>
> Third, when, as is usually the case, the union has exclusive control over the "manner and extent to which an individual grievance is presented," (citation omitted), there is an additional reasons why arbitration is an inadequate substitute for judicial proceedings. The union's interests and those of the individual employee are not always identical or even compatible....
>
> Finally, arbitral factfinding is generally not equivalent to judicial factfinding....

Although arbitration is "well suited to resolving contractual disputes, ... it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *McDonald, supra,* at 291, 104 S.Ct. at 1803; *See also, Nicholson v. CPC International*

*Inc.,* 877 F.2d 221, 228–229, 231–236 (3d Cir.1989) (Sloviter, J.) (Becker, J., dissenting) (Effect of arbitration on suits filed under Age Discrimination in Employment Act); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). With the judicial review provided in Handley's case as to whether the arbitrator's interpretation was "clearly within the collective bargaining agreement", such a determination does little to resolve any outstanding constitutional questions. *See Public Service Employees' Union Local 1300 v. Luzerne County,* Civ. No. 53–E 1987, attached to Doc. No. 14, Exhibit 4.

The Common Pleas Court reviewed only the arbitrator's decision in applying the collective bargaining agreement and discussed little else. As such, res judicata does not preclude further action in this court on the basis of federal claims for gender discrimination.

### E.

This does not, however, preclude defense counsel from asserting the doctrine of collateral estoppel to issues raised at arbitration and considered by the Court of Common Pleas involving the validity of the Defendants' actions under the collective bargaining agreement. Collateral estoppel precludes a party from relitigating issues actually litigated in a prior action based on a different cause of action. *Parklane Hosiery Co.,* 439 U.S. at 326, 99 S.Ct. at 649.

In applying the doctrine, Pennsylvania courts have determined that: 1) the issue decided in the prior adjudication must be identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

■ The court finds that any issue as to the validity of the actions taking by the Defendants under the terms of the collective bargaining agreement have already been presented to an arbitrator and re-

solved in favor of the Defendants. Specifically, the issue presented to arbitration was:

Whether the County's suspension/termination of the grievant violated the contract?

The arbitrator ruled their actions did not violate the contract and such a determination was upheld by the Court of Common Pleas. Therefore, the procedures followed by the Defendants in terminating Kathleen Handley were not violative of the collective bargaining agreement. Accordingly, this court finds that the first element in applying collateral estoppel, i.e. identity of issues, has been satisfied.

As to the remaining elements, we find sufficient privity between Kathleen Handley and her union as well as the County and those named in this federal suit, regarding the issues of contract violations presented to the arbitrator and state court which would preclude a renewal of these challenges. *American Postal Workers Union v. U.S. Postal Service,* 736 F.2d 317, 318 (6th Cir.1984) (It has long been held that a decision against a union can be binding on union members in a subsequent action); *Acree v. Air Line Pilots Ass'n,* 390 F.2d 199, 202 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968) (The individuals actually represented by the union are bound by the first action to the extent their interests were there represented); *Mandarino v. Pollard,* 718 F.2d 845, 850 (7th Cir.1983) (A government and its

officers are in privity for purposes of res judicata).

Moreover, this court finds that the Plaintiff had a full and fair opportunity as a member of Local 1300 to assert the rights provided to her as a member of that union under the collective bargaining agreement. Although Plaintiff Handley may not be satisfied with the representation she received from her union, that does not create the right to relitigate those issues examined in arbitration.[6]

As to the merit issue, in the six page decision of Judge Patrick J. Toole, Jr., the state court initially criticized the actions of counsel in the procedural filing of this case, however, the court goes on to "address and resolve this controversy on its merits." *Public Service Employees' Union Local 1300 v. Luzerne County,* Civ. No. 53–E 1987, attached to Doc. No. 14, Exhibit 4.

Consequently, we find all the elements of collateral estoppel are present and that Plaintiffs should be precluded from raising any issue as to the validity of the Defendants actions in terms of a violation of the collective bargaining agreement.

### Violation of Plaintiffs' Constitutional Rights under Section 1983

#### 1. State Action Under 42 U.S.C. § 1983.

The Plaintiffs brings this suit pursuant to 42 U.S.C. § 1983 claiming that the Defendants violated Kathleen Handley's constitutional rights to free speech, due pro-

---

**6.** In addressing the issue of fair representation, it has been established that when a union proceeds to arbitration, it has a reasonable ambit of action. *See* Perritt, *Employee Dismissal Law and Practice,* 2d Edition at 158–160 (1987).

The union need not have an attorney at the arbitration hearing nor permit the grievant to bring an attorney to participate in the hearing. *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir.1985); *Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295, 301 (5th Cir.), cert. denied, 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981); *Walden v. Teamsters Local 71,* 468 F.2d 196 (4th Cir.1972). The grievant may not second guess the representative's or the attorney's selection of evidence or choice of relevant testimony. *Teamster Local 542,* 223 N.L.R.B. 533 (1976). Nor is a union required to file suit to overturn an arguably erroneous arbitration

award. *Fountain v. Safeway Stores,* 555 F.2d 753 (9th Cir.1977). The grievance process need not be error free; some degree of negligence on the part of the union is permissible. *Griffin v. U.A.W.,* 469 F.2d 181, 183 (4th Cir.1972). The union is required only to represent the grievant adequately in the arbitration hearing. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *Smith v. Hussmann Refrigerator Co.,* 619 F.2d 1229, 1241 (8th Cir.1980), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980).

Finally, the Supreme Court has said that an arbitrator's award, even if erroneous, must stand, unless "the employee's representation by the union had been dishonest, in bad faith or discriminatory." *Hines* 424 U.S. at 554, 96 S.Ct. at 1051. The Handleys have not made such allegations of union impropriety to this court.

cess and equal protection. Section 1983 reads, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, or regulation, custom or usage of any state or territory or the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parties injured in an action at law, sued in equity, or other proper proceedings for redress ...

Thus, a federal court is authorized to grant judicial relief when an individual's federally protected rights are violated by a state or local official. Generally, for a party to assert a cognizable claim under Section 1983, two elements must be satisfied: (1) the plaintiff must allege that some person has deprived him of a federal right, and (2) he must allege that the person who has deprived him of that right acted under color of state or territorial law. *West v. Atkins*, —— U.S. ——, ——, 108 S.Ct. 2250, 2254–56, 101 L.Ed.2d 40 (1988) citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds), *Daniels v. Williams*, 474 U.S. 327, 330–331, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986) and *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).[7]

## 2. Parties To be Sued Under Section 1983.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that a municipal body may be held liable for monetary, declaratory, and injunctive relief so long as the action that is alleged to be unconstitutional implements or executes a municipal policy or custom.[8] *See also, Colburn v. Upper Darby Township*, 838 F.2d 663, 671 (3d Cir.1988). A plaintiff must identify the challenged policy, attribute it to the governmental body itself, and show a causal link between execution of the policy and the injury suffered. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984) citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984).

In determining what constitutes an official "policy or custom", our Third Circuit has held that

> [e]ven in the absence of formal policy-making activity, "an 'official policy' may be inferred from informal actions or omissions of supervisory municipal officials," (citations omitted), although not from the misconduct of a single low-level officer. (citations omitted) ... Moreover, as we stated in *Davidson*, 752 F.2d at 828, "when officials with a responsibility to prevent harm, such as prison officials, fail to establish or execute appropriate procedures for preventing serious malfunctions in administration of justice,

**7.** The Court notes that Section 1983 does not by itself create or establish any substantive right. Instead, the statute only fulfills a procedural or remedial role. Thus, "one cannot go into Court and claim a violation of Section 1983—for Section 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979).

Section 1983 only provides a remedy when the plaintiff demonstrates a violation of a right protected by the federal Constitution or by federal statute other than Section 1983. Thus, Mrs. Handley's right does not emanate from § 1983, but rather from the equal protection clause of the 14th Amendment and the other constitutional provisions cited in her complaint. *See Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 n. 3 (5th Cir.1983).

**8.** In *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985), the Supreme Court ruled that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that is involved provided, of course, the public entity received notice and an opportunity to respond." There is, therefore, "no longer a need to bring official-capacity actions against local government officials, for ... local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Kochis v. John Reese, et al.*, Civ. No. 88–1610, slip op. at 4 n. 3 (M.D.Pa. April 24, 1989) (Conaboy, C.J.); *Cwalinski v. Santoli, et al.*, Civ. No. 88–1175, slip op. at 11 (M.D.Pa. April 13, 1989) (Conaboy, C.J.).

such failure would support a claim under § 1983. (citations omitted).

*Colburn v. Upper Darby Township*, Supra, at 671.

■ It is well established that a claim under § 1983 is insufficient if it is based merely on a showing that the defendant is the supervisor of the person or persons who allegedly committed an illegal or unconstitutional act. *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 (3d Cir. 1988); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir.1976); *Frett v. Government of the Virgin Islands*, 839 F.2d 968, 977 n. 4 (3d Cir.1988); *Talbert v. Kelly*, 799 F.2d 62, 66 (3d Cir. 1986).

■ Although we can not agree with the Plaintiffs' assertion that "Defendant Sincavage, as the head of the Luzerne County Prison Board, is the final authority or ultimate repository of the County's power in regard to the prison", there is sufficient indications of involvement to allow this suit to continue as to all named defendants at this time.[9] It is evident that the alleged harassment by Warden Sincavage brings him into consideration in this suit. It is further alleged that the County Prison Board and its individual members, including at least two of the three county commissioners, were told of the improper activities of Defendant Sincavage at Board hearings prior to Handley's termination and yet did nothing about it. Doc. No. 42 at 9 and 26; Doc. No. 68 at 9. Rather, by terminating Handley, the county appears to have condoned the actions of Sincavage which were allegedly made known to the county.

■ An entity may be liable even for "informal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights." *Bohen v. City of East*

*Chicago, Ind.*, 799 F.2d 1180, 1189 (7th Cir.1986), citing, *Wolf–Lillie v. Sonquist*, 699 F.2d 864 (7th Cir.1983); *See also*, *Kuchka v. Kile*, 634 F.Supp. 502, 507 (M.D. Pa.1985). For even in the absence of formal policy making activity, "an 'official policy' may be inferred form informal actions or *omissions* of supervisory municipal officials." *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 (3d Cir.1988).

We shall deny the Defendants' motion for summary judgment in which they claim the Plaintiffs failed to demonstrate any alleged constitutional deprivations attributable to the named individuals as well as the Prison Board or County since it is alleged that the governmental entities and Board members knew of the discrimination conducted by Warden Sincavage at the county prison; that the Board and the County failed to act to prohibit such conduct but rather acted to further the alleged deprivation by terminating Handley; and that the government's actions therefore constituted a "pattern or practice" of discrimination.

3. Free Speech Violation.

Although the Plaintiffs cite to the First Amendment to the United States Constitution in Count III of their complaint, this court perceives no viable claim present which demonstrates a violation of the Handleys' rights to "freedom of speech and ... to petition for a redress of grievances through access to the Court system." *See Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (Employee terminated after speaking on matter of public concern); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Nor have the Plaintiffs developed such a claim with any specificity, as required in civil rights actions, in any subsequent pleadings or briefs.

We shall, therefore, grant judgment in favor of the Defendants and against the Plaintiffs for that portion of the complaint

9. At the beginning of these proceedings, the parties were informed that for nearly eleven years, this court was involved in monitoring the activities of the Luzerne County Prison due to constitutional violations which had occurred in that institution. Our involvement in that matter, which made us familiar with the organizational structure of the prison, recently ended when the court granted a motion to terminate filed by the Defendants. *See Mawson v. Dorris*, (M.D.Pa.) (Conaboy, C.J.).

setting forth a first amendment claim for free speech or denial of court access.

### 4. Due Process Violation.

Plaintiff Kathleen Handley alleges that her "property" interest in employment and "liberty" interest in being free from stigma have been taken without due process of law. It is the Defendants contention that "employment is not a property right which is protected by the Fifth and/or Fourteenth Amendments to our United States Constitution." Doc. No. 33 at 18. Even if the Plaintiff is able to establish such right, the Defendants further argue that the procedures followed under the collective bargaining agreement provided all the process that was due. Doc. No. 68 at 15. We shall address each allegation accordingly.

Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..."[10] *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 539, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). State law determines whether such a property interest exists. *Brown v. Trench,* 787 F.2d 167, 170 (3rd Cir.1986), citing *Roth, supra.* In Pennsylvania, public employees generally have at will status and cannot be provided with tenure unless there is express legislative authority for doing so. *Id.* at 170 and cases cited therein; *See also, Abraham v. Pekarski,* 728 F.2d 167 (3d Cir.1984). (Just cause provision in county ordinance allows for property interest).

In this case, Plaintiff Kathleen Handley's employment is governed by a collective bargaining agreement which provides for appropriate procedures to be followed before an employee can be dismissed. Specifically, in Article XXX of the collective bargaining agreement, under the heading MANAGEMENT RIGHTS, Section One reads:

> Except as specifically limited by explicit provisions of this contract the employer shall have the exclusive right to manage the operations of the prison, including the right to hire, demote, suspend or discharge *for proper cause,* providing however, that the employer shall not discriminate against any member of the Union or shall not exercise its management power contrary to the provisions of this agreement.

Doc. No. 14, Exhibit 1 and 2 (emphasis added).

The collective bargaining agreement provides in Article XXXI entitled DISCIPLINE that:

> *Section 1.(a).* An employee who is suspended, demoted or discharged shall be given a written notice stating the reason for the disciplinary action within three (3) days thereafter. In case of suspension or discharge, the employee shall be advised that has the right to have his Union representative present and if this request is made, the employee shall be given the opportunity to have an interview with his Union representative before being required to leave the premises.
>
> *Section 2.* All disciplinary actions are subject to the grievance procedure provided below.
>
> *Section 3.* "The Code of Ethics" will be incorporated into the contract after the union is given an opportunity to review the code. Sufficient amount of time to select a review board to review the "Code."

Doc. No. 14, Exhibit 1 and 2.

---

10. In *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), the Court said that a "person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *See also, Bishop v. Wood,* 426 U.S. 341, 344 n. 6, 96 S.Ct. 2074, 2077 n. 6, 48 L.Ed.2d 684 (1976). A listing of steps before dismissal, however, may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures. *Id.* at 345, 96 S.Ct. at 2077.

Finally, the Code of Ethics [11] referred to in the collective bargaining agreement and adopted by the County and Local 1300 provides:

### D. PENALTY FOR VIOLATION OF RULES AND REGULATIONS

*Key to Disciplinary Action*

1st Level Offenses – DISMISSAL
2nd Level Offenses – FIVE (5) Days Suspension without pay
3rd Level Offenses – 1st Offense – Verbal Warning
2nd Offense – Three (3) Days Suspension without pay
3rd Offense – Dismissal

### E. FIRST LEVEL OFFENSES

3. Physically unable to perform required duties, other than injure occurring within the line of duty.

### F. THIRD LEVEL OFFENSES

7. Failure to abide by the required duty dress code stipulated by the office of the Warden ...

9. All other violations of rules, regulations, directions, or memorandum not specifically covered in this regulation.

Doc. No. 14, Exhibit 3 at 5–6.

It would appear that Plaintiffs expectations for continued employment based on the collective bargaining agreement and the Code of Ethics adopted by the County would establish a protected interest under the fourteenth amendment due process clause. Even if a property or liberty interest is established, however, it is the deprivation of that interest without due process of law that is actionable.

 A government official may not act under color of state law to substantially impair these interests absent procedures appropriate to the various interests involved. *Keddie v. Pennsylvania,* 412 F.Supp. 1264, 1273 (M.D.Pa.1976). What is required is that an individual be given notice and an opportunity to respond to the charges that threaten his or her employment and continued good standing for future employment opportunities. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494

(1985) (Pre-termination and post-termination hearings required); *Robb v. City of Philadelphia,* 733 F.2d 286, 293–294 (3d Cir.1984) (Liberty interest implicated only if (1) charge seriously damages standing in community or (2) imposes stigma that forecloses employment opportunities); *Keddie, supra,* at 1273.

 After reviewing the collective bargaining agreement, this court must concluded that all of the process that was due to protect Handley's property and liberty interests were provided for in the terms of the contract, including adequate notice prior to and after a suspension and/or termination. *See* Doc. No. 68 at 12–13, quoting collective bargaining agreement.

Although the arbitrator and Court of Common Pleas were critical of the delays engendered by the Defendants in handling Plaintiff's case, it was determined that the termination of Kathleen Handley was not in violation of the provision of that contract. In turn, this court finds that no violation of due process resulted as to delays engendered by the Defendants in the grievance procedure or in the actual termination procedures taken by them. To do otherwise would to call into question the factual determinations made by the arbitrator and relied upon by the state court in their conclusion as to the contractual validity of the Defendants actions.

Furthermore, as to the concerns raised by the Plaintiffs for injury to their reputations in regard to drug use, this can be addressed in the pendent state claim for slander rather than a constitutional deprivation. Unlike the cases cited by the Plaintiffs on this point, there was no allegation of drug use cited as a reason for Kathleen Handley's termination nor was that subject broached in the hearings before the Prison Board, the arbitrator, or the state court. *Cf. Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (Only if the employer creates and disseminates a false and defamatory impression about the employee

11. We note that for purposes of establishing a property interest, Plaintiffs base their claim, in part, on the Code of Ethics agreed to between the County and Local 1300. Doc. No. 42 at 27. For purposes of challenging the validity of Handley's termination, however, the Plaintiffs reverse their position and question the validity of the Code. Doc. No. 1 ¶ 30 at 9.

in connection with his termination is such a hearing required); *McKnight v. Southeastern Pennsylvania Transportation,* 583 F.2d 1229 (3d Cir.1978) (Intoxication as grounds for termination). Thus, any damage to potential and future contractual relations in her field of employment are appropriately addressed in the remaining pendent state claim for future contractual relations raised and preserved below.

Finally, besides this federal suit, the matters addressed here have been presented in one form or another to the Warden and Union Local 1300; the County Prison Board; an arbitrator; the Court of Common Pleas for Luzerne County; the National Labor Relations Board (NLRB); the Equal Employment Opportunity Commission (EEOC); and according to pre-trial discussions with counsel, is the subject of a suit filed by Handley against Union Local 1300. *See* Doc. No. 68 at 12–1315 at 2; Doc. No. 14, Exhibit 3 and 4; Doc. No. 15 at 2; and Doc. No. 1 at ¶ 19–20.

While many of these post termination administrative actions do not reflect on Handley's rights and the County's duty not to abridge those rights, some inconsistency as to the allegations made by the Plaintiffs are revealed. For instance, besides the inconsistent categorization of the Ethics Code described in footnote 11 in this memorandum, and the dubious portrayal of Warden Sincavage as the "final authority or ultimate repository of the County's power in regard to the prison" as discussed herein at page 25, questions as to the County's actions in processing Handley's claims have been described by Plaintiffs as being too constrictive on one hand but too protracted on the other. *Cf.* Doc. No. 1 at ¶ 38; Doc. No. 42 at 34.

Accordingly, we find it appropriate to rely on the findings of the arbitrator and state court in upholding the validity of the Defendants actions under the collective bargaining agreement. We hold that the Plaintiffs allegations of a denial of due process of law are without merit and judgment in favor of the Defendants will be entered.

5. Equal Protection Violation.

Various passages of Plaintiffs' complaint assert a claim against all Defendants alleging violations of the constitutional right to "equal protection of the laws." Doc. No. 1 at ¶¶ 25, 40–48. The fourteenth amendment provides in part that "[n]o State shall ... deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. The Supreme Court and this court have held that the equal protection clause contains a "federal constitutional right to be free from gender discrimination" that does not "serve important governmental objectives" and is not "substantially related to those objectives." *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979); *Gobla v. Crestwood School District,* 609 F.Supp. 972 (M.D.Pa.1985).

Judicial interpretation of any claim brought under this constitutional provision begins with a determination as to the class to which the Plaintiff belongs. For at its base level, the fourteenth amendment is "classification-oriented: ... it permits the state to draw distinctions between groups of similarly situated individuals provided that the distinction is rationally drawn to address a legitimate purpose." *Philadelphia Police and Fire Association for Handicapped Children, Inc., et al. v. City of Philadelphia, et al.,* 874 F.2d 156, 162–63 (3d Cir.1989) (Gibbons, C.J.).

As the appellate court indicates in *Philadelphia Police and Fire Assoc., supra,* at 162–63:

> Historically, certain classifications have proven suspect or quasi-suspect because they almost always serve no legitimate government purpose or because they impact a group traditionally politically unable to protect itself. *See Plyler v. Doe,* 457 U.S. 202, 216–17 & n. 14 [102 S.Ct. 2382, 2394–95 & n. 14, 72 L.Ed.2d 786] (1982). Such classification signal courts asked to review legislation employing them to apply strict or heightened scrutiny to such laws. *Id.* These suspect or quasi-suspect classifications, however, represent a very limited exception to the general rule.

When an action of the government effects a "fundamental" right such as interstate travel, privacy, voting, first amendment rights; a "suspect" grouping as race and national origin; or a "quasi-suspect" classification as gender, the court will take appropriate steps in analyzing the matter before it based upon an equal protection challenge. *Washington v. Seattle School District No. 1*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982); *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Cabell v. Chavez–Salido*, 454 U.S. 432, 102 S.Ct. 735, 70 L.Ed.2d 677 (1982); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

The essence of this claim, as presented in the complaint, is that the Defendants intentionally discriminated against her because of her sex by tolerating conduct by other employees while disciplining her for the same actions. It is apparent, however, that the complaint presently before the Court contains some allegations which are insufficient to support the Plaintiff's claim that her right to equal protection of the laws has been violated.

■■■■ Simply stated, equal protection affords an individual protection against intentional discrimination which is based upon class membership. *Alexander v. Chicago Park District*, 773 F.2d 850, 856 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894. Therefore, a person who brings an action under the equal protection clause must show intentional discrimination against her *because of her membership in a particular class, not merely that she was treated unfairly as an individual.* *Heubschen v. Department of Health*, 716 F.2d 1167, 1171 (7th Cir. 1983) (emphasis added).

■■■■ Even if the Defendants discriminated against the Plaintiff as alleged in her complaint, those portions of the pleading which allege discrimination based exclusively upon personal differences is not the brand of discrimination the equal protection clause was designed to protect. *Heubschen v. Department of Health, supra*, at 1171. The Plaintiff is not entitled to recover on the basis of equal protection where she alleges discrimination based on personal animosity and not as a victim of class prejudice. *See* Complaint at 15 ¶ 58 ( . . . the Defendants acted in concerted agreement and *out of personal animosity toward Plaintiff, Kathleen Handley*") (emphasis added). *See also Heubschen, supra; Gray v. Lacke*, 698 F.Supp. 750, 755 (W.D. Wis.1988); *Cf. Gobla v. Crestwood School District*, 609 F.Supp. 972, 978 (M.D.Pa. 1985); *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1220 (D.N.J.1984).

We shall, therefore, preserve the Plaintiffs' equal protection claims only as to those allegations which manifest intentional discrimination by the Defendants based on her membership in a protected class—i.e. gender, and address any remaining claims as to sexual harassment which altered the conditions of Handley's employment under Kathleen Handley's Title VII allegations.[12]

---

**12.** Many of the allegations of disparate treatment based on gender discrimination have been set forth in Plaintiffs' Title VII claim against the Defendants as her "employer" and not as a "government entity." Unlike Title VII claims which inquiry as to whether or not the sexual harassment altered the conditions of the victim's employment, an equal protection claim's ultimate inquiry is whether or not the sexual harassment constitutes intentional discrimination. *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir.1986); *Fuchilla v. Prockop*, 682 F.Supp. 247, 259 (D.N.J.1987).

A broad reading of the complaint, would allow such gender-based discrimination to be inferred as to the Defendants in both capacities and, as stated above, appropriate consideration will be given to both the Constitutional equal protection claim and the Title VII action at trial. *See Kelsey–Andrews v. City of Philadelphia*, Civ. No. 88–4101, slip op., 1989 WL 13647 (E.D.Pa. February 16, 1989) (1989 U.S. Dist. LEXIS 1641), citing the following: *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir.1986) (ultimate inquiry in claim for sexual harassment under the equal protection clause differs from inquiry under Title VII as to whether sexual harassment altered the conditions of the victim's employment so as to create an abusive working environment under *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *Roebuck v. Drexel*, 852 F.2d 715 (3d Cir.1988) (Substantive similarities between Title VII claim and Section 1981 action); *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556 (5th Cir.1983) (Distinction between equal protection claim and Title VII).

Gender Discrimination Under Civil Rights Act

### 1. Title VII of the Civil Rights Act of 1964.

Title VII of the Civil Rights Act of 1964, which went into effect on July 2, 1964, contains a wide range of provisions prohibiting discrimination based upon a person's gender.[13] Under the Act, it is forbidden for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate with respect to his compensation, terms, conditions, or privileges of employment," or to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex" *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989) citing 42 U.S.C. §§ 2000e–2(a)(1), (2); *see generally*, Pepper & Kennedy, *Sex Discrimination in Employment* (1981).

The goal of Title VII is to "eradicate discrimination while preserving workplace efficiency by having employers ignore the attributes of race, religion, sex, or national origin and focus on the qualifications of the applicant or employee. *Price Waterhouse*, supra, at ——, 109 S.Ct. at 1786–87. "To discriminate is to make a distinction, to make a difference in treatment or favor, and those distinctions or differences in treatment or favor which are prohibited by [Title VII] are those which are based on any five of the forbidden criteria: race, color, religion, sex, and national origin. Any other criterion or qualification for employment is not affected by this title." *Id.* at ——, 109 S.Ct. at 1787 citing 100 Cong. Rec. 7213 (1964).

### 2. Issues Presented and Preserved for Trial.

█ From the pleading and briefs which followed, this court has come to recognize that the principal justiciable claim presented by the Plaintiffs lies under Title VII for gender discrimination. In summation, the gist of Plaintiff Kathleen Handley's suit is that over an extended period of time, Defendant Sincavage made unwelcome sexual advances to her, both verbal and physical; that her rejection of such sexually explicit conduct adversely affect her position at the prison and created a hostile work environment; that her failure to submitted to the Warden's advances was used as a basis for employment decisions affecting her tenure at the prison; and that the disciplinary charges, which ultimately lead to her dismissal, were the result of selective enforcement of employment regulations and merely a pretext in order to conceal the illicit motives for her termination. That the Luzerne County Prison Board and its members, James Phillips, Michael Kaminski, and Leonard Falcone, where aware of the improper motivations and wrongful behavior of Warden Sincavage, but acted to condone such conduct by terminating Plaintiff Handley's employment. And finally, that the County of Luzerne is culpable under Title VII as the Plaintiff's employer for ratifying and finalizing the improper decision to terminate Handley's employment with the County.

As such, the above allegations of a "pattern and practice" of gender-based discrimination presents a claim ripe for adjudication and we shall proceed to trial as to the Title VII claims. *See generally, Tyson v. Sun Refining & Marketing Co.*, 599 F.Supp. 136 (E.D.Pa.1984); *Gemmell v. Meese*, 655 F.Supp. 577 (E.D.Pa.1986).

█ Before leaving this subject, however, two observations must be made as to Plaintiffs' claims concerning disparity in

---

**13.** Under the terms of Title VII, suit for gender discrimination can be brought against an "employer". 42 U.S.C. § 2000e–2. An employer is statutorily defined under 42 U.S.C. 2000e(b) and has been liberally interpreted to include supervisory employees, county boards, and commissions although no contest has been put forward in this case as to the propriety of naming the individual Prison Board members or each of the county commissioners. *See Duva v. Bridgeport Textron*, 632 F.Supp. 880 (E.D.Pa.1985); *Manley v. Mobile County, Ala.*, 441 F.Supp. 1351 (S.D. Ala.1977).

treatment as to other employees and the challenged promotional appointments. First, the specific allegation as to dissimilar treatment resulting from Defendant Sincavage's alleged desire to promote another female to whom he is romantically linked is not the basis for a Title VII claim. *DeCintio v. Westchester County Medical Center,* 807 F.2d 304 (2d Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987) (Title VII does not prohibit discrimination in favor of boss's lover).

Second, as to the allegation of the failure of the Defendants to promote Handley or others in her class for the positions of corporal and sergeant, we find that the Plaintiffs have failed to satisfy their burden of proof in light of the Defendants' motion for summary judgment. The Plaintiffs first alleged that the positions for sergeant and corporal were open but that Plaintiff Handley was not seriously considered to fill the vacancies and male candidates either less qualified or equally qualified obtained the positions.

The Defendants have challenged that assertion by stressing that the Plaintiffs have not named any individuals, male or female, who were appointed in the time period specified by the Plaintiffs, that there were no vacancies during the period in which the Plaintiffs claim such a violation occurred, and that Kathleen Handley does not explain why she is more qualified than the unnamed corporal or sergeant appointed before her.

We must agree with the Defendants that the allegations of the Plaintiffs are superficial on this point. The fact that female personnel do not hold positions of higher rank or authority in the county prison system, however, may be used as a factor to show a continuing pattern or practice of discrimination.

### Pendent State Law Claims

The Plaintiffs have attempted to present pendent state law claims for breach of contract, wrongful termination, intentional violation of Plaintiffs' contract rights and prospective contractual relations, emotional distress, and slander. The Defendants have challenged these claims by asserting their immunity under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. 8541 *et seq.* and specifically challenge the substantive merits of Plaintiffs' claims for emotional distress and punitive damages.[14] Plaintiffs have disputed the Defendants immunity defense claiming that their actions were taken with malice and constituted willful misconduct under 42 Pa.C.S.A. § 8550.

### 1. Slander

As discussed under the due process section of this memorandum, we hold that the only allegation of slander which would apply in this case lies against Defendant Sincavage in his individual capacity. In light of the recent case of *O'Donnell v. Yanchulis,* 875 F.2d 1059 (3d Cir.1989), however, the allegation involved here may very well fall as this case progresses. We shall, therefore, preserve the right of Defendant Sincavage to raise the immunity defense again prior to trial.

### 2. Emotional Distress

In *Williams v. Guzzardi,* 875 F.2d 46, 50–51 (3d Cir.1989), the Court of Appeals determined that Pennsylvania recognizes the tort of intentional infliction of emotional distress. Specifically, the Court held that although Pennsylvania has been critical of the Restatement formulation of this tort and has otherwise evidenced a restrictive view of it, recovery for emotional distress continues to exist under the law of Pennsylvania.[15]

There are four elements to this tort: the conduct must be extreme and outrageous, it must be intentional or reckless, it must cause emotional distress, and the distress

----

**14.** *See* footnote 4, *supra.,* for a discussion of punitive damages.

**15.** Section 46 of the Restatement (2d) of Torts (1965) states:

one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

must be severe. *Williams, supra,* at 52, citing *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir. 1979). However, the scope of liability under such a tort is limited by the requirement that competent medical evidence of causation and severity must be provided. *Williams, supra,* at 52 citing *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987).

The only instances in which courts have found conduct sufficiently outrageous in the employment context, is when an employer engages in both sexual harassment and other retaliatory behavior against the employee. *Kelsey–Andrews v. City of Philadelphia,* Civil No. 88–4101, slip op., 1989 WL 13647 (E.D. of Pa. February 16, 1989) (1989 U.S.Dist.Lexis 1641); *Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir.1988); *Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307 (M.D.Pa.1988). After analyzing the allegations presented in this complaint with the well reasoned analysis in *Kelsey–Andrews, supra,* this Court must conclude that such a tort will not lie against any of these defendants with the exception of Warden Sincavage.

Specifically, the only conduct which may "lead an average member of the community to exclaim, 'Outrageous!'," is that of the Warden as described, although no authority is cited, in Plaintiffs' opposition brief. Document # 42 at 3–4. Although such conduct, if true, is beyond the bounds of decency, the claim by the Plaintiffs remains quite tenuous in light of the fact that no competent medical evidence of causation and severity has been provided by the Plaintiffs. We shall, therefore, dismiss the pendent state claim for emotional distress as to all defendants except Sincavage and preserve the right of the Warden to strike this claim at the close of the Plaintiff's case in chief.

3. Breach of Contract, Interference with Prospective Contractual Relations, and Wrongful Discharge.

The Defendants have not challenged the allegations on these claims, only to stress the immunities defenses under the Political Subdivision Tort Claims Act of Pennsylvania. In light of our finding that any challenge concerning the issue of breach of the collective bargaining agreement, including wrongful termination, is precluded by collateral estoppel, the only matter which remains under this section involves future contractual relations. *See Thibodeau v. Foremost Insurance Company,* 605 F.Supp. 653 (N.D.Ind.1985).

Since this concept has not been extensively addressed by either party, we shall allow that portion of the Plaintiffs' claim as to interference with future contractual relations to continue with the right of the Defendants to raise any appropriate challenge.

Accordingly, an appropriate order is attached.

## ORDER

AND NOW, this 9th day of June, 1989, IT IS HEREBY ORDERED THAT:

1. The Defendants' motion for summary judgment is denied as to:

a. Plaintiffs' equal protection claim pursuant to 42 U.S.C. § 1983;

b. Plaintiffs' Title VII claim for gender discrimination pursuant to 42 U.S.C. § 2000e;

c. Plaintiffs' pendent state claims of:

1. Slander as to Defendant Sincavage alone;

2. Intentional infliction of emotional distress as to Defendant Sincavage only;

3. Intentional interference with future contractual relations.

2. Defendants' motion for summary judgment is granted as to all other claims of the Plaintiffs Kathleen Handley and Frank Handley.

3. Counsel shall meet to review the Court's determinations outlined herein and to prepare a proposed schedule for disposition of the remaining claims.

4. A case management conference with the Court will be held on <u>Monday, July 10, 1989</u>, at <u>10:00 a.m.</u>.